UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 1:12-CR-45 |
| | ) | |
| EDWARD YOUNG | ) | Collier/Carter |
| | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant Edward Young, by and through counsel and pursuant to Federal Rule of Criminal Procedure 32, hereby submits his Sentencing Memorandum, with attached Exhibits A-H.

**I. INTRODUCTION**

On January 14, 2013, Mr. Young pled guilty to a one count indictment, which charged Mr. Young with being a felon in possession of ammunition in violation of 18 U.S.C. section 922(g)(1). (PSR ¶ 1.) The Presentence Investigation Report ("PSR") concluded that Mr. Young should be found to be an Armed Career Criminal pursuant to 18 U.S.C. section 924(e)(1) and sentenced to a mandatory minimum of 180 months pursuant to the Armed Career Criminal Act ("ACCA"). For the reasons that follow, Mr. Young challenges the application of the ACCA to his case as being violative of the Fifth and Eighth Amendments and asserts that if any sentence is imposed, the sentencing advisory range of 10-16 months should be the point of departure; given that Mr. Young has already served 12 months (PSR ¶ 3), any sentence should be for time served.

**II. RELEVANT FACTS**

In October 2011, a search was conducted of Mr. Young's residence, and seven (7) shotgun shells were discovered. (PSR ¶ 4.) Mr. Young had previously been convicted of felonies and was subsequently charged with being a felon in possession of ammunition. (Id. ¶¶

1, 4.) Mr. Young entered into a written Plea Agreement (PSR ¶ 2), and Mr. Young pled guilty to having possessed the seven shotgun shells while being a convicted felon (PSR ¶¶ 1, 4).

Mr. Young came into possession of the seven shotgun shells as a result of having been asked by a widow neighbor, Neva Mumpower, to help dispose of some of her deceased husband's effects. (Ex. B (¶¶ 3-4, 7).) The shotgun shells were mixed in with some of her deceased husband's effects that Ms. Mumpower requested that Mr. Young sell. (Id. (¶¶ 4, 6-7).) Mr. Young had no idea that possessing the shotgun shells posed any problem under federal law (Ex. A (¶ 7)), and Mr. Young freely admitted possessing the shotgun shells (PSR ¶ 4).

Mr. Young's family is highly opposed to any further incarceration and believes his presence in the home is crucial to the family unit. (Exs. C-H.)

### III.  ANALYSIS

"'[I]t is the government's burden to prove that a defendant qualifies for the mandatory 15-year ACCA enhancement.'" U.S. v. Amos, 501 F.3d 524, 526 (6th Cir. 2007) (quoting U.S. v. Hargrove, 416 F.3d 486, 494 (6th Cir. 2005)).

**Sentencing Edward Young to the ACCA Mandatory Minimum of 15 Years for Possession of Shotgun Shells in Violation of 18 U.S.C. Section 922(g) Would Violate the Due Process Clause of the Fifth Amendment.**

While the Sixth Circuit has noted that "…the general rule [is] that citizens are presumed to know the requirements of the law[, the Sixth Circuit has] also noted that this rule is not absolute, and may be abrogated when a law is 'so technical or obscure that it threatens to ensnare individuals engaged in apparently innocent conduct,' because to presume knowledge of such a law would violate a core due process principle, namely that citizens are entitled to fair warning that their conduct may be criminal." U.S. v. Napier, 233 F.3d 394, 397-98 (6th Cir. 2000) (quoting U.S. v. Baker, 197 F.3d 211, 218-19 (6th Cir. 1999)). "'The requirement of fair notice is

not applied mechanically or without regard for the common sense judgment that people do not review copies of every law passed.'" U.S. v. Caseer, 399 F. 3d 828, 836 (6th Cir. 2005) (quoting Columbia Nat. Res., Inc. v. Tatum, 58 F.3d 1101, 1105 (6th Cir. 1995)).

In Napier, the defendant also pointed out that the lack of a mens rea requirement for 922(g) violations meant that persons could be punished for "…conduct that an ordinary person would not consider to be criminal[,]" citing Judge Posner's dissent in U.S. v. Wilson, 159 F.3d 280 (7th Cir. 1998), cert. denied, 527 U.S. 1024, 119 S. Ct. 2371, 144 L.Ed.2d 774 (1999), and U.S. v. Emerson, 46 F. Supp.2d 598 (N.D. Tex. 1999). Id. at 397. At issue were alleged violations of 922(g)(8) for possession of a firearm and ammunition by a person subject to various domestic violence orders. The Sixth Circuit denied the Fifth Amendment challenge, noting that the domestic violence orders contain language regarding the ban on possession of firearms and that persons subject to domestic violence orders should be on notice that their status might cause the government to restrict their ability to possess firearms. Id. at 398-99. See also U.S. v. Beavers, 206 F.3d 706, 708-10 (6th Cir. 2000). Significantly, however, the Sixth Circuit did not make the same statements in Napier regarding ammunition even though illegal possession of ammunition was also at issue.

Other courts have dealt similarly with the issue of possession of firearms by prohibited persons and the question of notice. For example, in U.S. v. Giles the court that the defendant should have known of the prohibition against felons possessing firearms by virtue of having completed a Form 4473 (or more than one) that warned the defendant he could not legally buy a gun. 640 F.2d 621, 629 (5th Cir. 1981) ("While we might sympathize with his protestations that he did not know his conduct was illegal, our sympathy is tempered by the fact that each Form 4473 plainly warned him that he could not buy a gun."). However, the court took due care to

note that "…due process concepts of notice might limit the operation of th[e] rule [that ignorance of the law is no excuse] in some circumstances when 'a person, wholly passive and unaware of any wrongdoing, is brought to the bar of justice for condemnation in a criminal case.'" Id. at 628 (quoting Lambert v. California, 355 U.S. 225, 228, 78 S. Ct. 240, 242, 2 L.Ed.2d 228 (1957) (citation omitted)).

In another case, the Sixth Circuit did not excuse a defendant from criminal liability who claimed that he could not understand a Colorado statute barring felons from possessing firearms and went on to state that felons should know that their right to possess firearms might be restricted. U.S. v. Haire, 89 Fed. Appx. 551, 555-56 (6th Cir. 2004).

The common theme of the cases cited above is that in each instance, the defendant should have known that possession of a firearm was prohibited. See also Brian E. Sobczyk, 18 U.S.C. § 922(G)(9) and the Lambert Due Process Exception Requiring Actual Knowledge of the Law: United States v. Hutzell, 217 F.3d 966 (8th Cir. 2000), 80 Neb. L. Rev. 103, 122 (2001) (discussing that it is public knowledge that possession of a gun after being convicted of a violent crime is highly regulated). Here, however, the situation is different. Mr. Young was in possession of seven shotgun shells by virtue of a widow having asked him to help dispose of effects of her deceased husband, which included the shotgun shells. The shotgun shells were not the fruits of a crime and were not used in the commission of any crime. Mr. Young had no idea that he was not allowed to have shotgun shells. Mr. Young did not have a shotgun. Mr. Young was not armed in any way, nor has Mr. Young ever even been accused of having been armed.

Shotgun shells are not inherently dangerous in and of themselves. Applicable Tennessee law does not prohibit felons from possessing shotgun shells. See Tenn. Code Ann. §§ 39-17-1301(13), 1304, & 1307. Shotgun shells are not weapons, and "[p]ossession of shotgun shells is

not illegal, absent some other factor which makes it so." U.S. v. Teague, No. 2:10-CR-006-RWS-SSC, 2010 WL 6529640, at *13 (N.D. Ga. Nov. 12, 2010) (citations omitted). Ammunition is inoperative without a gun and can be used recreationally for legitimate purposes, unlike, say, silencers, which are also inoperative without a gun but are not "'intrinsically innocent.'" U.S. v. Lemons, 153 F. Supp.2d 948, 959 (E.D. Wis. 2001) (quoting U.S. v. Poulos, 895 F.2d 1113, 1122 (6th Cir. 1990)). Under federal law, shotgun shells are specifically excluded from the definition of "destructive device." 18 U.S.C. § 921(a)(4)(B). In fact, the Eighth Circuit has suggested that while a state police officer would surely know it is illegal for a felon to possess a firearm, even a state police officer might not know it is a federal law violation for a felon to possess ammunition. U.S. v. Blom, 242 F.3d 799, 808 (8th Cir. 2001) (distinguishing between "likely" knowing and "surely" knowing).

As a result of the above, there is a vast gulf between what courts have frequently found to be common knowledge in society, which is that felons may not possess firearms, and the far more obscure part of that same statutory scheme, which is that felons may not possess ammunition, and shotgun shells in particular, which perhaps have the closest association of all ammunition with innocent recreational activity. In fact, that vast gulf may exist in part because the firearms prohibition component of 922(g) is so well known, meaning that the average person (or even the average felon) thinks that the firearms prohibition component of 922(g) is the entirety of the regulation. "[T]he Sixth Circuit has recognized that the obscurity of a law can be relevant when the law reaches those engaged in "'apparently innocent conduct.'" U.S. v. Huff, No. 3:10-CR-73, 2011 WL 1308099, at *7 (E.D. Tenn. Jan. 3, 2011) (quoting U.S. v. Baker, 197 F.3d 211, 218-19 (6th Cir. 1999) (cited above)). In Caseer, the Sixth Circuit further discussed the concept of fair notice in the Fifth Amendment context, quoting a law review article in a

parenthetical in stating that "'[t]he real source of notice is not the arcane pronouncements of the law reports but the customs and the sensibilities of people—what Holmes termed a sense of 'common social duty' … [I]t may well be that preoccupation with the concept of 'lawyer's notice' has diverted our attention from instances of real unfairness." 399 F.3d at 839 (quoting John Calvin Jeffries, Jr., Legality, Vagueness, and the Construction of Penal Statutes, 71 Va. L. Rev. 189, 231 (Mar. 1989) (quoting Nash v. U.S., 229 U.S. 373, 377, 33 S.Ct. 780, 57 L.Ed. 1232 (1913))).

If it is true that "…due process issues require that each case be considered on its own unique facts, including not just the text of a regulation, but also the subject matter of that regulation and the persons who are targeted by its enactment[,]" Caseer, 399 F. 3d at 857 (Holschuh, D.J., concurring in part & dissenting in part), the above-listed facts of Mr. Young's case are relevant to the determination of whether there has been a violation of due process. The offense of being a felon in possession of ammunition in violation of 18 U.S.C. section 922(g) is a strict liability offense. See, e.g., U.S. v. Hammons, No. CR 07-1164, 2012 WL 119616, at *21 (D. New Mexico Jan. 12, 2012) (citations omitted). Thus, it is possible for Mr. Young to have innocently been in possession of the shotgun shells, not having intended to violate any law and not knowing he was violating any law, and to have violated 922(g)(1), a *malum prohibitum* offense, in the process, which is in fact what happened.

It stands to reason that if Mr. Young had no notice that he was violating federal law by possessing shotgun shells, he certainly had no notice that he might be subjecting himself to the Armed Career Criminal Act. If the title of the ACCA is "…not merely decorative[,]" as discussed below, then Mr. Young would have absolutely no idea that the innocent possession of shotgun shells might lead to a mandatory minimum 15-year sentence, especially as Mr. Young

6

knows he has never been accused of having been criminally armed or having used a weapon in the commission of a crime.  Under these circumstances, the application of the 15-year mandatory minimum sentence under the ACCA for the innocent violation of an obscure provision of a strict liability statute would be an unconstitutional violation of Mr. Young's due process rights guaranteed by the Fifth Amendment.

**Sentencing Edward Young to the ACCA Mandatory Minimum of 15 Years Would Violate the Eighth Amendment Prohibition Against Cruel and Unusual Punishment.**

The ACCA has been the subject of many Eighth Amendment challenges.  The Sixth Circuit stated in 2011 that "…we are aware of no court of appeals decision that has struck down the Armed Career Criminal Act as violative of the Eighth Amendment."  U.S. v. Moore, 643 F.3d 451, 456 (6th Cir. 2011).  Five months later, the Sixth Circuit, in U.S. v. Brown, 443 Fed. Appx. 956 (6th Cir. 2011), cited (among other cases) Moore in denying Fifth and Eighth Amendment challenges to the ACCA and stated that "[i]n the teeth of these precedents [the defendant] has not identified, nor have we found, any decision from any court invalidating the application of ACCA's mandatory minimum to an individual on constitutional grounds[; the defendant] gives no good reason for making this case the first."  443 Fed. Appx. at 960.  Respectfully, there are many good reasons for making Mr. Young's case the first.

In Moore, the Sixth Circuit discussed at length the analysis required to evaluate an Eighth Amendment challenge to the ACCA.  The Eighth Amendment contains a "'narrow proportionality principle.'"  643 F.3d at 454 (quoting Harmelin v. Michigan, 501 U.S. 957, 996, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)).  The proportionality between crime and sentence does not have to be strict; the Eighth Amendment will strike down only a sentence that is extreme or grossly disproportionate.  Id. (citations omitted).  "Th[e] analysis begins with a comparison of the gravity of the offense and the severity of the sentence."  Id. at 455 (citation omitted).

7

With regard to the ACCA, the U.S. Supreme Court has stated as follows:

> As suggested by its title, the Armed Career Criminal Act focuses upon the special danger created when a particular type of offender—a violent criminal or drug trafficker—possesses a gun. See *Taylor*, *supra* at 587-588, 110 S.Ct. 2143; 470 F.3d, at 981, n. 3 (McConnell, J., dissenting in part) ("[T]he title [of the Act] was not merely decorative"). In order to determine which offenders fall into this category, the Act looks to past crimes. This is because an offender's criminal history is relevant to the question whether he is a career criminal, or, more precisely, to the kind or degree of danger the offender would pose were he to possess a gun.
>
> In this respect—namely, a prior crime's relevance to the possibility of future danger with a gun—crimes involving intentional or purposeful conduct (as in burglary and arson) are different than DUI, a strict liability crime. In both instances, the offender's prior crimes reveal a degree of callousness toward risk,
> but in the former instance they also show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger. We have no reason to believe that Congress intended a 15-year mandatory prison term where that increased likelihood does not exist.

Begay v. U.S., 553 U.S. 137, 146, 128 S.Ct. 1581, 1587, 170 L.Ed.2d 490 (2008) (with Scalia, J., also noting in concurrence that "burglary was the least risky crime among the enumerated offenses" in the ACCA). Furthermore, "[t]he principal purpose of the federal gun control legislation, therefore, was to curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.' S.Rep. No. 1501, 90th Cong., 2d Sess., 22 (1968)." U.S. v. Giles, 640 F.2d 621, 624 (5th Cir. 1981) (quoting Huddleston v. U.S., 415 U.S. 814, 824, 94 S.Ct. 1262, 1268, 39 L.Ed.2d 782 (1974)).

The offense of being a felon in possession of ammunition in violation of 18 U.S.C. section 922(g) is, as discussed above, a strict liability offense. See, e.g., U.S. v. Hammons, No. CR 07-1164, 2012 WL 119616, at *21 (D. New Mexico Jan. 12, 2012) (citations omitted). Courts have held the fifteen year mandatory minimum sentence under the ACCA to be a "severe punishment" for felony gun possession. U.S. v. Mitchell, 932 F.2d 1027, 1029 (2nd Cir. 1991). See also U.S. v. Coleman, No. 1:09-CR-175, 2010 WL 582678, at *10 (N.D. Ohio Feb. 10,

2010) (characterizing the imposition of the ACCA's 180 month mandatory minimum as "a harsh result" for felony possession of a non-functioning firearm that would otherwise have resulted in a sentencing advisory range of 57-71 months).

Here, the PSR has concluded that Mr. Young should be deemed an "Armed Career Criminal" pursuant to the ACCA. As can be seen from the discussion of Mr. Young's prior criminal record in pages 4-10 of the PSR, Mr. Young has never been convicted of a weapons violation. In addition, all of Mr. Young's felony convictions are more than 20 years old and, as accurately noted in the criminal history category calculation, are too stale to be used for that purpose. See also U.S. v. Presley, 52 F.3d 64, 69-70 (4th Cir. 1995) (convictions too stale for consideration by U.S.S.G. may be used under ACCA since there is no temporal restriction). The instant plea of guilty to a violation of § 922(g) for possessing the shotgun shells is not considered a "crime of violence" under Application Note 1 to U.S.S.G. § 4B1.2, and Mr. Young cannot be characterized as a "career offender" under U.S.S.G. § 4B1.1.

In the absence of the ACCA, Mr. Young's total criminal history score would be 1, and his criminal history category would be I. (PSR ¶ 27.) Mr. Young's offense level would have been 14, reduced to 12 from his acceptance of responsibility. (Id. ¶¶ 8-17.) As a result, the sentencing advisory range would have been 10-16 months. On the day of the sentencing hearing, which is currently scheduled for May 9, 2013, Mr. Young will have already served 12 months. (Id. ¶ 3.)

So, if Mr. Young is found to be an "Armed Career Criminal," Mr. Young will be sentenced to a term in prison, with no possibility of parole, that will be in excess of ten (10) times longer than the sentence suggested by the U.S.S.G. If Mr. Young is forced to serve a minimum of 180 months, his youngest child will be at least 21 by the time of his release.

Even assuming *arguendo* the propriety of Mr. Young's conviction for an innocent violation of an obscure portion of a strict liability statute of which he had no notice, this disparity between the 10-16 month advisory range and the 180 month mandatory minimum under the ACCA appears to be the largest disparity at issue in an Eighth Amendment challenge to the ACCA that could be found. Regardless, there can be no question whatsoever that sentencing Mr. Young to 180 (or more) months would be a "harsh" or "severe" result that would be disproportionate to the crime for which Mr. Young would be convicted.

The question then becomes whether that disproportionality rises to the level of being extreme for Eighth Amendment purposes. For the following reasons, it does.

As discussed above, the felon-in-possession of ammunition charge under 18 U.S.C. section 922(g)(1) is a strict liability offense. The sentencing enhancement of the ACCA under 18 U.S.C. section 924(e) is a "harsh" and "severe" penalty. This combination of a strict liability, *malum prohibitum* offense involving the lowest level of criminal culpability with an enhanced penalty has been problematic for the courts from the inception of the ACCA. The way in which courts have resolved this is to find some element of wrongful intentional conduct on the part of the defendant associated with the possession of the firearm or ammunition that brings the case within the ambit of the ills Congress intended for the ACCA to correct and that justifies the imposition of the ACCA's mandatory minimum sentence.

For example, in U.S. v. Lyons, 403 F.3d 1248 (11th Cir. 2005) the court dispensed with the defendant's Eighth Amendment challenge to the imposition of an enhanced sentence under the ACCA for possession of ammunition (while assaulting a police officer) by noting that "…the Supreme Court has consistently affirmed the imposition of longer sentences, even for non-violent offenses, based on an offender's recidivism." 403 F.3d at 1256. The court then goes on

to cite three U.S. Supreme Court cases to support its proposition, but in all three cited cases, the offense that resulted in the imposition of the heightened sentence was an offense that had an element of intent. Id. at 1256-57. See also John Shepard Wiley, Jr., Not Guilty by Reason of Blamelessness: Culpability in Federal Criminal Interpretation, 85 Va. L. Rev. 1021, 1105 (Sept. 1999) ("[F]or strict liability crimes, traditionally, 'penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation[; t]he small penalties attached to such offenses logically complimented the absence of a mens rea requirement: In a system that generally requires a 'vicious will' … imposing severe punishments for offenses that require no mens rea would seem incongruous.'" (quoting Staples v. U.S., 511 U.S. 600, 616-18 (1994) (reversing district court conviction for possession of fully automatic machine gun due to defendant's asserted lack of knowledge of the same)).

Here, those avenues of justification are not available. The shotgun shells were unrelated to the reason the search of Mr. Young's home was conducted, were not used in the commission of any crime, and were not the fruits of any crime. The possession of the shotgun shells by Mr. Young cannot be tied to any criminal intent or moral culpability on his part. In fact, Mr. Young possessed the shotgun shells at the request of the neighbor to whom the shotgun shells belonged.

Even more, the application of the ACCA to Mr. Young's case does not in any way comport with the intent of Congress in enacting the ACCA. The ACCA predicates involved are for what Justice Scalia characterized as the "least violent" of the qualifying offenses and would be stale under the U.S.S.G. There is no element of criminal intent associated with Mr. Young's possession of the shotgun shells, which is characterized as non-violent, and as noted above, the shotgun shells are not weapons. Perhaps most significantly, the application to the ACCA to Mr. Young's case could result in a 180 month (or more) mandatory minimum sentence for Mr.

Young being an "Armed Career Criminal" when he has never, ever been accused of being armed. If the ACCA's title is "not merely decorative," then it is crystal clear that Mr. Young does not fall within the category of persons Congress intended to imprison as recidivists with weapons. See, e.g., U.S. v. McKenzie, 96 Fed. Appx. 164, 166 (4th Cir. 2004) (affirming ACCA sentencing enhancement as the defendant's offense "was not atypical" and was within "the heartland of offenses generally covered by the applicable guideline"). "We have no reason to believe that Congress intended a 15-year mandatory prison term where th[e] increased likelihood [that the offender is the kind of person who might deliberately point a gun and pull the trigger] does not exist." Begay, 553 U.S. at 146.

In short, this is the rare case that requires a finding of gross disproportionality for all of the above-stated reasons, and the Eighth Amendment should bar the application of the ACCA to Mr. Young's case.

## **Conclusion.**

At worst, Mr. Young should be sentenced to time served and released. To recap the reasons in summary form:

- Mr. Young innocently possessed the shotgun shells only because the shells were mixed in with the effects of his neighbor's deceased husband which the widow had requested that Mr. Young sell for her;

- The shotgun shells were in no way associated with the commission of a crime, nor were the shells fruits of any crime;

- No shotgun was present or found;

- The search that revealed the shotgun shells was wholly unrelated to the shotgun shells;

- Mr. Young did not know that he was prohibited from having shotgun shells;

- 18 U.S.C. section 922(g)(1)'s prohibition of a felon from possessing ammunition is an obscure, strict liability offense;

- Possession of shotgun shells by felons is legal under Tennessee state law;

- Shotgun shells, under federal law, are not firearms, weapons, or destructive devices, and possession of the same does not result in a person being armed;

- Possession of shotgun shells is not considered a violent crime;

- Mr. Young has never, ever even been accused of having been an armed criminal or using a weapon in the commission of a crime;

- The ACCA predicates are considered stale under the U.S.S.G.;

- The ACCA predicates are characterized by Justice Scalia as the "least violent";

- In the absence of the ACCA, Mr. Young's advisory sentencing range would be 10-16 months;

- Mr. Young has already been imprisoned for 12 months; and

- Mr. Young has a wife and four minor children with whom he spent significant amounts of time and who desperately want him home.

It sounds overly dramatic to say, but this is not who we are as a nation. To sentence Mr. Young to 180 months (or more) under these circumstances would be, simply stated, grossly unfair, and it is the kind of gross unfairness that is prohibited by the U.S. Constitution. Mr. Young is clearly not in the category of persons Congress sought to punish when enacting the ACCA, and the Court should thus refuse to apply the ACCA to Mr. Young's case.

Respectfully submitted,

EVANS HARRISON HACKETT PLLC

By: __/s/_Christopher T. Varner_____
    Christopher T. Varner (BPR No. 018260)
One Central Plaza, Suite 800
835 Georgia Avenue
Chattanooga, TN  37402
Phone:  (423) 648-7890
Fax:  (423) 648-7987
cvarner@ehhlaw.com

*Attorneys for Edward Young*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing pleading has been served upon all parties at interest in this case or counsel for said parties via the U.S. District Court's Electronic Case Filing System.

This the _____ day of _____, 2013

EVANS HARRISON HACKETT PLLC

By:   /s/ Christopher T. Varner