UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| EDWARD YOUNG, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos. 1:12-CR-45-CLC-CHS |
| | ) | 1:16-CV-25-CLC |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Before the Court is Petitioner's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. 50.][1] On June 21, 2016, Petitioner filed a pro se supplement challenging his enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), in light of the Supreme Court's invalidation of that provision's residual clause in *Johnson v. United States*, 135 S. Ct. 2551 (2015). [Doc. 52.] The United States responded in opposition to both the petition and supplemental claim. [Doc. 56.] Petitioner replied in turn. [Doc. 57.]

For the reasons that follow, the request to amend [Doc. 52] will be **GRANTED** and the amended petition [Docs. 50, 52] will be **DENIED** and **DISMISSED WITH PREJUDICE**.

**I. BACKGROUND**

The facts surrounding Petitioner's convictions were recited by the Sixth Circuit as follows:

> In 2010 or 2011, [Petitioner] helped a neighbor sort and sell her late husband's possessions. When he discovered a box of seven shotgun shells in the collection, he stored the shells in a drawer where they would be safe from his four children. Because [Petitioner] had previously been convicted of a number of

---

[1] All citations to the record are found on the docket of Case No. 1:12-CR-45.

felonies, all burglary-related offenses between 1990 and 1992, it was a crime for him to possess ammunition. 18 U.S.C. § 922(g)(1). He was unaware of this legal disability.

Police officers later showed up on [Petitioner's] doorstep investigating recent burglaries at an auto repair shop and a storage building. During the consent search, officers found several items reported stolen, though it is unclear whether the items were associated with the recent burglaries. They also found the box of seven shotgun shells in a drawer, which [Petitioner] readily admitted to possessing.

*United States v. Young*, 766 F.3d 621, 623 (6th Cir. 2014).

On May 1, 2012 a federal grand jury for the Eastern District of Tennessee filed a one count indictment against Petitioner, charging Petitioner with a single count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). [Doc. 1.] On October 29, 2013, Petitioner pleaded guilty to the sole charge against him. [Doc. 29.] The Court, finding Petitioner's prior first and second-degree burglary convictions qualified him as an armed career criminal, subsequently sentenced Petitioner to 180 months' imprisonment. [Doc. 38.] On appeal, the Sixth Circuit affirmed Petitioner's conviction and sentence. [Doc. 45.] The Supreme Court denied certiorari. [Doc. 47.]

On February 2, 2016, Petitioner filed a motion pursuant to 28 U.S.C. § 2255 alleging multiple theories of ineffective assistance [Doc. 50] and a supplemental claim alleging an invalid sentence enhancement under the ACCA in light of the Supreme Court decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) [Doc. 52].

The matter is now ripe for review.

## II.	TIMELINESS OF PETITION AND SUPPLEMENT

### A.	TIMELINESS OF PETITION

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the one-year statute of limitations applicable to collateral challenges under § 2255 runs from the latest of:

2

(1) "the date on which the judgment of conviction becomes final;" (2) "the date on which the impediment to making a motion created by Governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such Governmental action;" (3) "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme court and made retroactively applicable to cases on collateral review;" or (4) "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f). In the case of a direct appeal, a petitioner's conviction becomes final upon either denial of certiorari or expiration of the ninety-day period in which to seek such review. *Clay v. United States*, 537 U.S. 522, 525, 532 (2003). Thus, Petitioner's conviction became final for purposes of the statute of limitations on February 23, 2015 [Doc. 47] and his statutory limitations period expired one-year later on February 23, 2016. The original petition—filed on February 2, 2016—falls safely within the permissible period for requesting collateral relief.

      B.      **TIMELINESS OF SUPPLEMENT**

Amended claims and defenses are subject to the same limitations as an original motion. *Cameron v. United States*, No. 1:05-CV-264, 2012 U.S. Dist. LEXIS 48381, at *3–6 (E.D. Tenn. April 5, 2012) (citing *Olsen v. United States*, 27 F. App'x 566 (6th Cir. Dec. 14, 2001)). Supreme Court precedent makes clear that *Johnson*'s invalidation of the ACCA's residual clause amounted to a new rule made retroactively applicable on collateral review. *See*, 28 U.S.C. § 2255(f)(3); *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016) ("*Johnson* is . . . a substantive decision and so has retroactive effect . . . in cases on collateral review."); *In re Windy Watkins*, 810 F.3d 375, 380–81 (6th Cir. 2015) (finding *Johnson* constitutes a new substantive rule of

constitutional law made retroactively applicable on collateral review and thus triggers § 2255(h)(2)'s requirement for certification of a second or successive petition). Petitioner's pro se supplement falls safely within the one-year period for requesting timely *Johnson*-based relief. [Doc. 52.] The request to amend will thus be **GRANTED**.

### III. STANDARD OF REVIEW

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

Petitioner articulates three grounds of collateral challenge in his original petition [Doc. 51], and supplements these grounds with one related-but-novel ground for relief by way of subsequent amendment [Doc. 52]. In total, Petitioner's four grounds for collateral relief include allegations of: (1) constitutionally deficient assistance during the plea process arising from counsel's alleged failure to advise Petitioner of the consequences of his plea deal and the scope of his sentence exposure (Ground One) [Doc. 51 pp. 4-5]; (2) constitutionally deficient assistance during the plea process arising from counsel's alleged failure to request a Rule 11 plea hearing (Ground Two) [Doc. 51 pp. 5-6]; (3) constitutionally deficient assistance during the appeal process arising from counsel's failure to present select evidentiary issues on appeal (Ground Three) [Doc. 51 pp. 6- 7]; and (4) unconstitutional sentence enhancement under the

Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e) (Ground Four) [Doc. 51].

The Court will evaluate Petitioner's specific claims in turn.

### IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

A petitioner alleging ineffective assistance must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel's assistance is presumed to have been effective, and the petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). If a petitioner fails to prove that he sustained prejudice, the Court need not decide whether counsel's performance was deficient. *See United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006) (holding that alleged "flaws" in trial counsel's representation did not warrant a new trial where the claims, even if true, did not demonstrate that the jury would have reached a different conclusion).

5

### A. Ineffective Assistance for Failing to Properly Advise Petitioner About Consequences of Plea Deal or Scope of Sentencing Exposure

Petitioner's first ineffective assistance of counsel claim alleges trial counsel rendered constitutionally deficient representation during the plea process by failing to properly advise Petitioner of "his rights to trial and the full consequences he would face once signing the plea agreement." [Doc. 51 p 4.] Petitioner contends that, in explaining the plea agreement, counsel advised him of the possible sentence exposure for his crimes absent ACCA considerations—ten to sixteen months' imprisonment—but failed to advise Petitioner of the possible 180-month sentence under the ACCA. *Id.* As a result, Petitioner claims he entered the plea under the counsel-induced impression that he would receive a ten to sixteen-month sentence, rendering entry of his plea agreement for the 180-month sentence unknowing and involuntary. *Id.* Petitioner asserts that, but for counsel's "faulty and erroneous legal advice," Petitioner would have "proceeded to trial, maintain[ed] his innocence, . . . [and] appealed the evidence that resulted from 'fruit of a poisonous tree' [sic]." *Id.* at 5.

In response, the Government argues that, contrary to Petitioner's assertions of being unaware of his possible sentence exposure during the plea process, Petitioner "expressly acknowledged . . . that, if he was deemed to be an armed career criminal, he would face a penalty range of fifteen years up to life imprisonment." [Doc. 56 p. 6.] The Government asserts that the Court, during Petitioner's Rule 11 hearing, ensured that Petitioner's plea was entered knowingly and voluntarily. *Id.*

The Court agrees with the Government. A preliminary review of the record demonstrates Petitioner did expressly acknowledge that if he were determined to be an Armed Career Criminal, he would be subjected to "a term of imprisonment of not less than fifteen years and up to Life." [Doc. 29 ¶ 1.] Petitioner also acknowledged in his plea agreement that the Court's

6

"sentencing determination w[ould] be based upon the entire scope of [Petitioner's] criminal conduct, criminal history, and pursuant to other factors and guidelines as set forth in the sentencing guidelines and the factors set forth in 18 U.S.C. § 3553." *Id.* ¶ 6. Moreover, and most relevant to the present claim, Petitioner acknowledged "any estimates or predictions made . . . by defense counsel or any other person regarding the potential sentence in [his] case [would] not binding on the Court and may not be used as a basis to rescind this plea agreement." *Id.* Petitioner reiterated many of these same assurances during the Rule 11 plea colloquy. The Court, in its Report and Recommendation and on the basis of the record made at the hearing, determined that Petitioner's decision to enter a plea of guilty was both knowing and voluntary. [Doc. 31.]

The Court now finds Petitioner's contradicting assertion that his decision was not knowing or voluntary to be insufficient to overcome the presumed veracity of his sworn statements during the Rule 11 colloquy. *See Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (finding the defendant was bound by statements he made in response to the court's plea colloquy); *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (finding the petitioner bound to plea colloquy responses despite some evidence that contradicted statements made therein). It is clear to the Court that Petitioner was made aware of the extent of the potential punishments he could receive for his crimes on multiple occasions and still chose to enter a guilty plea. Even assuming counsel had incorrectly advised Petitioner about the sentence range applicable to him, Petitioner cannot demonstrate that the incorrect advice caused him to plead guilty and, as a result, he cannot establish he incurred any prejudice due to counsel's allegedly deficient assistance. *See United States v. Hicks*, 4 F.3d 1358, 1363 n. 3 (6th Cir. 1993) ("[I]t is well

7

settled that a defense attorney's erroneous calculation and prediction of the sentencing guidelines is not a basis for setting aside a guilty plea.").

### B. Ineffective Assistance for Failing to Request a Rule 11 Plea Hearing

Petitioner's next theory alleges counsel deviated from professional norms by failing to request a Rule 11 plea hearing after Petitioner signed his plea agreement. [Doc. 51 p. 5.] Petitioner explains that while he recognizes the "plain error by this Honorable Court" in failing to hold a Rule 11 Plea hearing, it is clear to Petitioner that Counsel had no interest in bringing this error to the Court's attention because such a hearing would have allowed Petitioner to "recognize that counsel's legal advice [was] not consistent with [the sentence] he was actually exposed to." *Id.*

The Court finds Petitioner's claim is without merit. Petitioner's plea hearing in this case was conducted on January 14, 2013. At the plea hearing, the Court found "that the plea [was] made knowingly and with full understanding of each of the rights waived by [Petitioner] . . . [and] was made voluntarily and free from any force, threats, or promises, apart from the promises in the plea agreement. [Doc. 31.] Counsel's decision not to move for a plea hearing in light of the fact that a plea hearing was already conducted was reasonable.

### C. Ineffective Assistance for Failing to Present Evidentiary Issues on Appeal

Petitioner's final ineffective assistance of counsel claim alleges trial counsel rendered constitutionally deficient representation by failing to present evidentiary issues on appeal that Petitioner specifically requested counsel present. [Doc. 51 p. 6.] Citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), Petitioner argues that "an attorney who fails to file an appeal of a client who specifically requests it acts in a professionally unreasonable manner per se." *Id.* Petitioner claims his request for a new attorney after counsel failed to present these evidentiary

8

issues is a "clear showing" that Petitioner would have appealed the issue given a fair opportunity to and, therefore, satisfies a showing of prejudice.

The Government, in turn, argues it is within counsel's discretion to determine which claims to raise on appeal and that "only when issues not raised 'are clearly stronger that the ones presented will the presumption of effective assistance of counsel be overcome.'" [Doc. 56 p. 7.] The Government contends Petitioner has failed to identify any argument, "let alone a potentially meritorious one," that counsel might have raised to challenge the Court's denial of the motion to suppress, therefore failing to show deficient assistance on counsel's part. *Id*. at 8.

The Court is persuaded by the Government's argument. Petitioner has claimed ineffective assistance, but has failed to demonstrate deficient assistance or prejudice connected to that claim. To start, Petitioner's offer of his motion for new counsel as evidence of deficient assistance is insufficient. It does not show, as Petitioner seems to suggest, that the motion for new counsel was due to counsel's failure to acknowledge Petitioner's request to challenge the denial of the motion to suppress. At best, Petitioner's motion for new counsel suggests that, after ten days of not hearing from his attorney, Petitioner was unhappy with the level of communication offered after the suppression hearing. Assuming, for the sake of argument, that counsel was deficient in this respect, Petitioner has still failed to demonstrate prejudice. Petitioner claims the "clear" prejudice is his lost opportunity to appeal the Court's decision regarding the motion to suppress. However, a showing of prejudice requires more. To successfully demonstrate prejudice in an ineffective assistance of counsel claim, Petitioner is required to prove that the outcome of the hearing would have been different had the opportunity to appeal been realized. *Strickland*, 466 U.S. at 694. As the Government has correctly pointed out, Petitioner has failed to identify what argument, if any, counsel should have made on appeal,

9

and, further, how that argument could have been successful. As a result, *Strickland's* prejudice prong has not been satisfied. Because Petitioner has failed to show deficient assistance and prejudice connected to counsel's failure to appeal, his claim under this theory fails.

## V. *JOHNSON* CLAIM

The supplement contains a single ground of collateral attack, arguing *Johnson* removed an unspecified number of Petitioner's prior convictions from § 924(e)'s definition of "violent felony" and, as a result, that Petitioner no longer qualifies as an armed career criminal subject to the ACCA's enhanced fifteen-year mandatory minimum sentence. [Doc. 52.]

The ACCA mandates a fifteen-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1) (emphasis added). The provision defines "serious drug offense" as any "offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). The Act goes on to define "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, or involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). Only the third portion of the above definition—the residual clause—was held to be unconstitutionally vague by the Supreme Court in *Johnson*. 135 S. Ct. at 2563. The Court went on to make clear, however, that its decision did not call into question the remainder of the

10

ACCA's definition of violent felony—the use-of-physical-force and enumerated-offense clauses. *Id.*; *United States v. Priddy*, 808 F.3d 676, 682–83 (6th Cir. 2015). Nor does *Johnson* disrupt the use of a defendant's prior serious drug offenses as an independent form of ACCA predicate conviction. *See, e.g.*, *United States v. Smith*, No. 10-CR-20058, 2015 WL 5729114, at *9–13 (E.D. Mich. Sept. 20, 2015) (noting that *Johnson* does not affect a defendant's categorization as an armed career criminal based on his or her prior serious drug offenses).

The validity of Petitioner's sentence thus depends on whether three or more of his prior convictions qualify as "serious drug offenses" under § 924(e)(2)(A) or, in alternative, "violent felonies" under one of the unaffected provisions of § 924(e)(2)(B). *See, e.g.*, *United States v. Ozier*, 796 F.3d 597, 604 (6th Cir. 2015) (explaining courts need not decide what import, if any, Johnson has on the Sentencing Guidelines' residual clause where the petitioner's prior convictions qualify as predicate offenses independent of the residual clause), *overruled on other grounds by Mathis v. United States*, 136 S. Ct. 2243, 2251 n. 1 (2016). To determine whether an offense qualifies under one of the above provisions, courts must first identify the precise crime of conviction by employing a "categorical approach," looking "only to the statutory definitions—elements—of a prior offense, and not to the particular facts underlying [each individual] conviction[]." *Descamps v. United States*, 133 S. Ct. 2276, 2283, 2285 (2013).

The Court finds at least four of Petitioner's prior convictions categorically qualify as predicate offenses independent of the now-defunct residual clause.[2] For purposes of § 924(e), the Supreme Court has defined "burglary" as any conviction, "regardless of its exact definition

---

[2] Because Petitioner's first and second degree burglary convictions qualify as predicate offenses independent of the residual provision, this Court finds that it need not address whether Petitioner's seven Tennessee aggravated burglary convictions remain violent felonies under the ACCA's enumerate offense clause. *See United States v. Stitt*, 646 F. App'x 454 (6th Cir. 2016) (granting *en banc* review to resolve that issue).

11

or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 599 (1990). Tennessee defined first degree burglary as "the breaking and entering into a dwelling house or any house, building, room or rooms therein used and occupied by any person or person as a dwelling place or lodging . . . by night, with intent to commit a felony." Tenn. Code Ann. § 39-3-401 (1982).[3] Second degree burglary was similarly defined as "the breaking and entering into a dwelling house or any house, building, room or rooms therein used and occupied by any person or persons as a dwelling place or lodging . . . by day, with intent to commit a felony." Tenn. Code Ann. § 39-3-403 (1982). Both offenses perfectly correspond with *Taylor*'s definition of generic burglary, meaning at least four of Petitioner's prior convictions categorically qualify as violent felonies under the enumerated offense clause. *See, e.g.*, *United States v. Jones*, 673 F.3d 497, 505 (6th Cir. 2012) (holding that pre-1989 Tennessee second-degree burglary categorically qualifies as generic burglary and is, thus, a violent felony under the enumerated-offense clause); *Smith v. United States*, No. 3:05-cr-74, 2016 WL 3349298, at *6 (E.D. Tenn. June 15, 2016) (finding, post-*Johnson*, that first-degree burglary constituted an ACCA predicate and that the only difference between first-and-second-degree burglary is that

---

[3] Tennessee revised its burglary statutes on November 1, 1989, as part of the State's comprehensive criminal code revision. *See, e.g.*, *State v. Langford*, 994 S.W. 2d 126, 127–28 (Tenn. 1999). The pre-1989 version of the Tennessee Code criminalized six types of burglary offenses: (1) first-degree burglary, Tenn. Code Ann. § 39-3-401 (1982); (2) breaking after entry, Tenn. Code Ann. § 39-3-402 (1982); (3) second-degree burglary, Tenn. Code Ann. § 39-3-403 (1982); (4) third-degree burglary, Tenn. Code Ann. § 39-3-404(a)(1) (1982); (5) safecracking, Tenn. Code Ann. § 39-3-404(b)(1) (1982); and (6) breaking into vehicles, Tenn. Code Ann. § 39-3-406 (1982). Tennessee law now prohibits only three types of burglary: (1) burglary, Tenn. Code Ann. § 39-14-402 (2016); (2) aggravated burglary, Tenn. Code Ann. § 39-14-403 (2016); and (3) especially aggravated burglary, Tenn. Code Ann. § 39-14-404 (2016).

one occurred by night and the other by day).[4]  Because at least three of Petitioner's convictions qualify as violent felonies independent of the now-defunct residual clause, the *Johnson* decision is inapposite to his case.

IV.     **CONCLUSION**

For the reasons discussed above, Petitioner's request for leave to amend [Doc. 52] will be **GRANTED** and amended petition [Docs. 50, 52] will be **DENIED** and **DISMISSED WITH PREJUDICE**.  The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous.  Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal.  *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**.  28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

---

[4] In *Mathis v. United States*, 136 S. Ct. 2246 (2016), the Supreme Court held that a prior conviction cannot qualify as a generic form of a predicate violent felony if a locational element of that crime is made broader than an element of the generic offense by way of an enumerated list of alternative factual means for satisfaction of the former.  Unlike the Iowa statute at issue in *Mathis*, however, the Tennessee statutes at issue here do not contain any "alternate ways of satisfying a single locational element" that fall outside *Taylor*'s definition of generic burglary. Rather, the phrase "dwelling house or any house, building, room or rooms therein" necessarily aligns with generic burglary's elemental requirement that the breaking or entering be of a "building or structure," as opposed to a boat or motor vehicle. As such, *Mathis* has no impact on the Court's ability to categorize pre-1989 first and second-degree burglary convictions as violent felonies under the enumerated-offense clause.

13